13-20325 and we'll hear first from Mr. Adler. Good morning. May it please the Court. This case, unfortunately, must be remanded yet again back to the District Court because the restitution order that was entered at the resentencing continues to include matters that it should not include. The restitution should be limited, according to the Adams case, should be limited to the agreement of the parties, the agreement the parties made in the plea agreement. Here, that included facet joint injections, paravertebral injections, sacroiliac nerve injections, sciatic nerve injections, and various nerve block injections. Now, you're representing Dr. Arun Sharma. Yes, I'm sorry, Your Honor. So that list of injections is what the parties agreed was the scope of the scheme in the plea agreement that was drafted by the government and executed by both parties. After remand, however, the Court included, beyond that list of injections, the Court included procedures including injection of diagnostic or therapeutic anesthetic of antispasmodic substance, injection into spinal canal, incision of spinal nerve. Those are the types of procedures that were also included into the restitution after remand, which go far beyond the scope of the agreement of the parties. Do they in any way fit within the general categories of injections in the fact section of the plea agreement? I think that's a very good question, Judge Elrod, and I don't think there's any evidence in the record that the answer to that is yes. Part of the problem here is after remand, the government, I think in an effort to clarify the issue, started using the CPT codes to identify which injections were covered under the plea agreement, but there are several problems with the use of the CPT codes. Number one, there's no evidence of the accuracy or the origin of the CPT codes, and number two, the CPT codes are not identified in the plea agreement itself. It appears that it could have been identified in the plea agreement, and that certainly would have avoided all of these issues had the plea agreement just stated essentially that restitution will be due for the following CPT codes, then it would have been a rather simple matter of going through all of the materials and adding up the numbers for those CPT codes. So instead of clarifying the issue, I think the government's attempted use of the CPT codes actually muddied the waters a little more. Remind me, is there a list that you have of the codes that are ineligible? We have, again, Judge, that's an excellent question, but it's a little hard to answer. As the court may recall from the record, trial counsel attempted to obtain a continuance of the resentencing and some discovery material so that they could go through and try to match those up. The district court chose to deny those motions for continuance and for the discovery, so we don't have a complete sort of universe of which codes qualify and match up to the language in the plea agreement and which codes do not qualify. The government seems to be acknowledging in Exhibit D of their resentencing memo that about $2,200 may not be covered by the language of the plea agreement, and although that number is small, I think the court is well aware from its prior opinion in this case that every dollar needs to be accounted for in the restitution award. There's no harmless error standard here, so even if it's conceivably just a few cents, it has to go back for clarification. In this case, if the court does send it back, I think to avoid yet again another appearance here by the Sharmas in this case and another remand, the ideal situation would be to allow us . . . Oh, I think every good thing has to come to an end sometime. And certainly, Judge, there is some value in finality,  What's the potential amount of money involved in this particular issue for your client? Potentially, I think it's in the millions of dollars. And so there were so many, despite the fact that the government considerably narrowed the scope of the claims for restitution, you're saying that it's still millions of dollars off, but all these were injection-related procedures that you're describing. They may have been injection-related procedures, but that's not the language in the plea agreement. It doesn't say injection-related procedures. It says a specific list of injections. Well, all those, from what little I recall of medical terms, they all sounded related to me. Well, and it sounds like . . . Spine, joints, bones. That may be the case, Judge. I don't think there's any evidence in the record of that, though. Well, I guess Judge Hittner felt the same way, though. Felt the way that . . . I do. Was that close enough? Well, but again, I think the case law requires accuracy as opposed to just finality. I don't disagree that the MDR says what it says, but there's always some room for debate about what the terms mean, right? Well, and I think that room for debate could have been removed had the CPT codes been used in the plea agreement or had the language that's used in the plea agreement matched up with the items that the restitution award includes. Thank you. Thank you. We have time for a couple. Mr. Berg. Good morning, Counselors. Good morning. I know you want to talk about your independent issues for your project, but could you answer if the expert calculated a restitution at a number that's extremely similar to the government's calculation apart from the offset issue, why isn't that close enough for government work? You know, your amount is 37-670-826-32, and there's 37-636-436-61. I think in the trial court, the accounting expert's number was actually a little bit larger than the government's suggested number. The problem with close enough for government work in the restitution arena is the case law says every dollar has to be accounted for. So close enough as opposed to exact. Well, your expert said it's more than what the government actually did. But that number was before consideration of the offsets. Right. And the fact that it puts aside the offset issue. So that was – I mean, I agree that is a valid point of departure for everybody in terms of a starting point number. The difference is the government would have ended at that starting point, and our position has been throughout that we were entitled to certain offsets, and we just wanted the opportunity to present that to make a record. I think what happened with the first panel that considered this case, once they determined that the matter was off by millions of dollars and they were going to have to remand, they went beyond the necessary, which was to then allocate a burden of proof to the defendants, something that's normally done by the district court, but was done here at the first instance by the appellate court, and then review the record as if that had happened in the district court and conclude that the government had satisfied its responsibility and that the defendants failed to meet the burden of proof that they didn't even know they had in the district court in terms of the offsets. And that's my second issue, is that it's something of a due process violation. If you're told only on appeal that you had a burden of proof below, there's no question the district court has the authority to designate to a party the burden of proving a certain aspect of the MVRA if you're seeking offset. But that didn't happen in the district court. And the cases that were cited by the court here were cases where the district court had allocated the burden to the defendant and then the defendant failed in its proof. Here, the defendant never got the opportunity to try. Now, the remand order said there would be no new evidence. Well, it said that it would be the evidence that was already in the record. Now, the claims for offset were already in the record. They'd been there for a while. They had never been heard formally. And what the Sharmas sought was to get access to their patient files, which had been seized by the government in the course of its investigation, so they could then have a hearing and present evidence as to what was a legitimate medically reasonably necessary offset. The court denied that pretty quickly. So, and the patient files are in the record. They were not given information in the record. Well, the patient files are in the custody of the government. Right, but they're part of the universe that the panel opinion was including, correct? In terms of the evidence, the existing evidence as opposed to new evidence, yes. That was in existence and in the hands of the government, so it would not be something external to the case. And it was simply the request of the defendants, if we are to go forward with this and to prove our offset, we need these files because that is the evidence that we could rely on to show medical necessity. I thought the first opinion dealt with the issue of offsets. It did, but it did so in this, what I contend was an erroneous fashion that denied the defendants due process because what, the way it dealt with it. The circuit denied due process? Not this panel. No. But, yes, what happened was that panel, normally the procedure is the district judge will designate under the MVRA a shifting burden to one side or the other, and that's what the case law holds and that's what the statute provides. But I mean, are you doing a collateral attack on our previous opinion which squarely addressed offsets? Well, it's not so much a collateral attack. Under the mandate law, if a previous panel decision is clearly erroneous, that's one of the exceptions to the mandate rule, and that's what we're contending that happened here. Then it can go back for the district court to do it right, and that's where we think everything went afoul because Judge Hittner followed that instruction to the T and said, the circuit's already made this legal finding and factual finding, so I can't go into it. But we think that that was wrong, that it was unnecessary to the original decision of the first panel in this case, which had already determined the restitution was way off because of the over-reliance on the pre-sentence report. Apart from the mandate rule, did the Sharmans file petitions for rehearing on the first panel decision? They did, and ultimately a petition for certiorari, which was denied. So they sought to get back to it, but I don't think we're precluded from asking this panel to take another look at it because that is one of the exceptions to the mandate rule. Right. You paused. And going back, I guess, to my first issue, which is pretty simple, this court instructed the district court to provide findings as to each of the insurers' loss. That was pretty particularized, each insurer's loss. Our judgment doesn't reflect that. The district court failed to append anything to the judgment on Keran Sharma, and we think that that has to be corrected as a matter of course anyway. But what does that entail? The district court incorporated a reference at the first sentencing hearing with governments who sentenced him in random, which would give all the data. So what is that? What kind of relief are you asking? Do you think he has to staple it together? I'm just trying to figure out what it is relief you would give on that point when it's already all the data that the district court incorporated as reference at the hearing. Well, it's relatively minor if that's the only issue we prevail on. If the matter has to go back, then I think administratively, those findings need to be appended to her judgment, to be incorporated in the judgment. I'm not sure simply incorporating by reference a government memorandum is the finding. Right, but you got to get a new sentencing in regards to that area. No, we're arguing it's the second issue that gets us to the new sentencing. Thank you. I will reserve now. Oh, do you have a question? Given that our court has held since 1998 that the defendant bears the burden of proving restitution offsets, how can the defendants argue that they were unaware of that burden? Or maybe you could reject the premise of that. I'm talking about the Scheinbaum case. Do you disagree with that? Or maybe I'm surprising you. Maybe I need to. Let me think through that. Because I know that there's a difference in the context of sentencing guidelines and showing offsets. You're right. If the restitution offsets under 18 U.S.C. 3664, I mean, the idea that it would be the defendant's burden. I mean, part of your due process claim is that it's just such a shock that the Fifth Circuit added this on. So my question is, is it really such a shock that the defendants would afford the burden of their own restitution offsets? Well, normally they're told in the district court, this is your responsibility. And that's the way the case law talks about it. The government has the burden of proving the amount of restitution. That's due. And the district court can then allocate responsibilities within that. And, yes, that may be true since that's the case law, but still it's the district court saying, and you have to do this. And that didn't happen. And then when they sought to do it the second time around, the district court denied it because of the preclusive nature of the original opinion. I want to add, since you're off your time now, you do have time for rebuttal, but I just want to ask, given the fact that these are tens of millions of dollars in restitution, how come both clients are represented by court-appointed counsel? Judge, I can't answer that because this court appointed us. But I do know that the original counsel, because it's in the record, each were compensated around seven figures, and we're doing the cleaning up here from the CGA side. I don't want to sound bitter about that. No, of course not. We're on the same side, though. But I am. Thank you. Ms. Barry, nice to see you. May it please the Court, Loretta Barry for the United States. The Sharmas knew they had the burden to establish a credit for the offsets because they presented an expert report of a forensic accountant to justify their restitution amount that gave them a credit for the offsets well prior to the first sentencing hearing in 2011. This is attached in this court's record at the original sentencing memo. Now, to arrive at the $21 million figure that was arrived at prior to the original sentencing hearing, the defense expert used CPT codes that were provided to her by the defense. That's at page four. Therefore, the argument that they did not know where the CPT codes came from is frivolous. They provided these CPT codes prior to the original sentencing hearing. In fact, the United States never even relied on them in the very first sentencing hearing. The United States relied on the victim impact statements. Now, this expert report relied on assumptions, estimates, and approximations, also provided by the defense. In fact, at the original sentencing hearing, defense counsel acknowledged that they had to use assumptions and estimates because the foreign medical graduates employed by the Sharmas did such a good job at presenting these false fillings. They also relied upon patient letters that described some relief for the trigger point injections. Now, the Sharmas also knew that they had the burden of proof on this issue because they relied on Klein in their original sentencing memo and at the original sentencing hearing. And Klein's central holding is medical necessity. There was no dispute over the medical necessity in that case. The hepatitis patients needed the interferon, and it would have been paid absent the fraudulent billing. In this court's original opinion at page 326, this court held that the district court properly rejected the Sharmas' rebuttal evidence. The district court was not entitled to rely upon the self-serving expert report that assumed without explanation that the trigger point injections were legitimate and medically necessary. District? Did the district court position that if they had presented proper evidence that they might have been entitled to offsets, but that the evidence was too speculative at the first hearing and that therefore it was correct to have discounted it? I mean, you don't theoretically have an issue with their entitlement that some of these procedures were probably medically necessary. Actually, Your Honor, we do. The district court and the appellate court held that all of the injections were fraudulent, and the Sharmas actually conceded at the sentencing that our calculation was correct. That's at page 3183 of the record. At resentencing, they agree that we calculated everything as to the fraudulent injections correctly. So it's very difficult for them at this juncture to argue that they should have been given a credit for facet joint injections or sacroiliac injections when they conceded at resentencing at page 3183 that the government's calculation was correct. This court also held that the district court was entitled to rely on facts in the plea agreements and in the rearrangements to show that not a single shot that was administered by the Sharmas was legitimate or medically necessary. Rather, it was merely a revenue stream for the Sharmas. The facts that the district court relied upon and this court relied upon at page 326 were the evidence that the Sharmas agreed to deliberate misdiagnoses in order to start patients on a shot regimen. They started patients on biweekly shot regimens, and if they refused, they made them sign mendacious acknowledgments. They took no sanitary precautions. They had the foreign medical graduates falsify bills en masse, and they universally removed when patients went to new doctors, they universally reported that their doctors took them off these injections as medically unnecessary. At resentencing, Judge Hittner complied with this court's explicit mandate that he refused, he was not allowed to consider the credit issue again based upon the very same self-serving expert report that they submitted in 2011. They attempted to submit it again at the resentencing in 2013. The district court properly rejected the exact same restitution amount that they're arguing again, down to the penny, $23 million down to the penny. Judge Hittner complied with the explicit mandate by specifying on the record the findings of actual loss for 1998 to 2009 for injected-related billings. There was no requirement in this court's mandate that the district court judge attach a list of the injections and actual losses to the judgment. Rather, the court just said that the district court must state on the record his reasons, which the district court did at page 3220 through 3226. Judge Hittner read aloud, line by line, this court's opinion. He stated he reviewed every single filing, and it was the most comprehensive electronic data submitted to him in 27 years on the bench. If the Sharmas had a problem with the lack of an attachment to the judgment, they could have filed a motion to correct the sentence, but as the court also noted in its opinion, it was a joint and several opinion, and the list was attached to Arun's judgment. In any event, the Sharmas agree that the calculation was correct, so that argument fails. Doesn't it seem unusual for the Fifth Circuit to have demanded for re-sentencing from the restitution point and not have it completely open for actual... It's OK to have a closed universe of documents that's been done, but to not allow all of the issues to be on the table, for issues to be precluded instead of getting a do-over? Normally, when you demand for re-sentencing on things, they get a do-over. Everybody gets a do-over. Wasn't this an unusual ruling? I think it was unusual, and they did limit it. If you look at footnote 35 in the opinion, they said, in some cases, we might have to have expert testimony about what the insurers would have paid for, and that's the victim insurers, the insurance companies, but in this case, we don't need to do that based on the expert report that the Sharmas submitted to show medical necessity, based upon the facts that they agreed to, that these were egregious... These acts of no sanitary precautions, deliberate misdiagnoses, all of the things that they admitted to in their plea agreement established that none of these injections were legitimate. Not a single shot. It was a revenue stream. So, therefore, the court addressed it in a very limited way and only allowed for a mandate on two very narrow issues,  three of the actual losses exceeded the temporal scope of the conspiracy, and so those were the very narrow issues that they were remanded on. Did the government ever contend before the first appeal that the government bore the burden of negating the offsets? The government did meet their burden, Your Honor. But negating the offsets, rather than them establishing the offsets. Did... Part of the theory of this is that the defendants knew at all times that they had the burden of establishing their offsets, and the closing counsel says they didn't know that, and so it's unfair due process property. Did the government ever, before the first appeal, indicate that it was their burden to negate the offsets? We absolutely did. We relied upon the Klein case, and we said in our sentencing memos that there's no evidence of medical necessity in this case. We referred them to their plea agreements, and there were statements in open court that admitted to all of these facts that showed that they were not medically necessary, and, in fact, this court held, and it's the law of the case, that the government firmly established that these injections were not medically necessary. But that's not the same thing as proving the offsets. I'm just not familiar with any law that says the government has to negative... You know, the government has the burden of proving... A negative? ..the excess, and that it was not... And it was excess because it was not reasonably necessary. The government does not have the... I assume did not attempt to bear the burden of saying, we anticipate what they're going to say, and we're going to refute that as well. No, I don't. I think that's correct. I was asking if the government took on the burden of the offsets, negating the offsets, at the first sentencing, such that everybody thought that the government's burden... Well... ..to establish the offsets. I'm not really sure how to answer that, Your Honour, except that I know that the Sharmas, they...we presented evidence that the injections were not necessary, and the Sharmas rebutted that with ample rebuttal evidence by their PSR expert forensic report. So, you know, this notion of how it's shifting or who has the burden, I'm not sure the court really has to delve into that. Of course the court has the law of the case before it, under the mandate rule, and the burden's there, but the point here on these facts is that whether they knew it or they didn't know it, at the time before the original sentencing hearing, they presented all of this evidence to show that they did have an entitlement to offsets. Offset may be sort of a misnomer. I mean, what they're really doing is trying to reduce the amount that the government claims that they owe, right? Yes. Yes, Your Honour. Normally, I think an offset means a different factual situation, such as, well, the insurers only reimbursed us 50% of what we charged. That's an offset to me. That's a different contractual basis or whatever for saying that this amount is not owed. But what you're saying is the government is bearing its burden and they're responding. That's correct, yes. And I think calling it an offset is a little misleading, maybe. Okay. But that's my opinion. Okay. You accept that, though? Yes, I do. The case before this... Previously, the previous panel, at page 326 of the opinion, where the court... The report went through every single reason for why that was the case. It is precisely at page 326 of the opinion. In addition, Judge Hittner noted that the defendants pled guilty to all of those facts and announced them at rearrangement, the facts that established that these injections were not medically necessary. I'm sorry. So, the opinion was the evidence of the case. Can you help me with that? What was the evidence offered at the resale on this case? The evidence? Well, there wasn't any re-offered because it's the law of the case barred Judge Hittner from entertaining evidence all over again on the very same issue that this court had decided. Well, no, but I'm not dealing with whether or not the case was legitimate. We're dealing with if they represented... You have the burden of showing them a fraudulent to begin with as part of to get the... to get it. What evidence was brought forward to show that all these injections were fraudulent after the sentencing here? Well, Your Honor, the SHARM has admitted that our calculations were correct, and our calculations were all fraudulent-related billing. So, they conceded that there was no debate at resentencing about whether the injections were fraudulent or not. They just wanted a credit for the injections they did give. So, at page 3183, they're conceding that the calculations for all these fraudulent injections were correct. They just wanted a deduction for what they actually injected. So, the answer to the question that no evidence was brought because it wasn't a contested point, yes, that's the answer, and also because the district court was following this court's mandate not to expand the record as to either party, only to address the issues... only to address the evidence that was in the record and not to expand it, and that is why. Because to have heard evidence and to have allowed the parties to re-argue the issue would have been disregarding this court's express mandate not to do that. Well, but at all times, the government would maintain the burden to show that the injection codes listed in the sentencing memorandum were fraudulent. I mean, that was the government's burden. Yes, and we established that based upon their... And then the district court agreed with our argument, and as did this court, that their expert report to show that they were legitimate was self-serving, was based on assumptions, and in contrast to that, we had claims and data from the victim insurers, and then we had their plea agreements that acknowledged all of these things that they did, as I mentioned, the deliberate misdiagnoses, all of these things that showed very concretely that none of these injections were legitimate. This issue of the trigger point injection credit has been fully litigated below and is barred by the law of the case. This court definitively held that the revenue stream for the Sharmas was not legitimate, not a single shot was legitimate. The issue of a lack of notice of their burden to establish credit for medical necessity fails, given the expert report they submitted prior to the original 2011 sentencing hearing. It's been rejected by this court and panel re-hearing and by the Supreme Court, and it's really just an attempt to circumvent the law of the case with a different panel of this court. If there's no further questions, I respectfully request that the court encourage finality of litigation on this issue of a credit for the Sharmas revenue stream. Do you have any speculation as to why they have appointed counsel at this point? I do not, Your Honor. We're talking tens of millions of dollars. Did the government seize it? We're in the process of it, yes. We've seized a good amount, yes, Your Honor. Okay, well, thank you very much. Thank you. Yes, Your Honor, there's quite a lot of litigation on that issue, yes. I respectfully request the amended judgments be affirmed. Thank you. Thank you. I think the court ought to move sui sponte to increase your billing rate. If their children can afford lawyers, they ought to be able to. I'm glad that's in the record, Your Honor. You're in favor of that, huh? I don't have any rebuttal unless the court has any questions. I'll give my remaining time to Mr. Burke. Thank you very much. The only thing I want to emphasize, the defendant's report, I believe it's the Clevis report, and the government's numbers roughly correspond. We agree that that was kind of the universe of money that had been billed. We did not agree that everything included in that universe was fraudulent. And that is an important distinction because we always maintain that the trigger point injections, to a great extent, were medically necessary. And would entitle a reduction in the total amount in terms of restitution as opposed to the total number that was billed. So, when opposing counsel says that that was conceded, you take issue with that? It was not conceded that all of it was fraudulent. The concession is that that $37 million number is the correct point of departure for everybody. But not that that all represents fraud. That was never conceded that everything represents fraud at any stage of this litigation. Because that was the whole argument for what we called an offset. But I do agree that our billing rate should go up. If there's no other questions, then we thank you very much. Thank you, sir. Appreciate it.